UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

SECURITY ALARM FINANCING ENTERPRISES, L.P.
and CALIFORNIA SECURITY ALARMS INC.,

      Plaintiffs,

 -against-

CITIZENS BANK, N.A. and CITIZENS FINANCIAL
GROUP, INC.

      Defendants.

------------------------------------x

MEMORANDUM DECISION
AND ORDER

19 Civ. 2679 (GBD)

GEORGE B. DANIELS, United States District Judge:

  Plaintiffs Security Alarm Financing Enterprises, L.P. and California Security Alarms Inc. bring, *inter alia*, a breach of contract claim against Defendants Citizens Bank, N.A. and Citizens Financial Group, Inc. Plaintiffs now move for partial judgment on the pleadings on their breach of contract claim, pursuant to Federal Rule of Civil Procedure 12(c). (*See* Pls.' Notice of Mot. for J. on the Pleadings Under Fed. R. Civ. Proc. 12(c), ECF No. 19; Pls.' Mem. of Law in Supp. of Their Mot. for Partial J. on the Pleadings, ECF No. 19-1.) For the following reasons, Plaintiffs' motion is GRANTED.

## I.  FACTUAL BACKGROUND

  On December 19, 2014, Plaintiffs entered into a credit agreement with Defendants, pursuant to which Defendants loaned certain funds to Plaintiffs. Approximately four years later, in late 2018, Plaintiffs informed Defendants of Plaintiffs' intention to pay off the loan. (*See* Compl., ECF No. 1, at ¶ 16.) In response, Defendants provided Plaintiffs with a Payoff Letter, dated and executed on November 2, 2018, which provided in relevant part that "[t]he aggregate amount of the Payoff Obligations under the Existing Loan Documents (collectively, the "Payoff

Amount") is set forth on Schedule D . . . ." (*Id.*, Ex. 1 (Nov. 2, 2018 Executed Payoff Letter ("Payoff Letter")), ECF No. 1-1, at 2) (emphasis in original).) Schedule D listed the total amount owed by Plaintiffs as $144,477,768.72. (*Id.*, Ex. 1 (Schedule D to Payoff Letter ("Schedule D")), ECF No. 1-1, at 11.)

Additionally, the Payoff Letter outlined Plaintiffs' and Defendants' respective obligations upon payment and receipt of the funds due pursuant to the loan. For example, the Payoff Letter provided that:

> [u]pon the [Defendants'] receipt of (a) a fully executed copy of this letter, and (b) the amounts set forth on Schedules A, B, C and D (collectively, the "Payoff Items"), . . . the Existing Loan Documents and all related documents (and any Commitments thereunder) shall automatically terminate and have no further effect, [and] the Loan Parties shall automatically be released and discharged from all obligations, guarantees, claims and demands under the Existing Loan documents and all related documents . . . . [A]ll Liens, encumbrances, pledges and security interests securing the Obligations shall automatically be released and terminate . . . and [ ] the Existing Administrative Agent shall, at the Borrower's expense, deliver such other release documents and take such actions as are necessary or reasonably requested by the Borrower to evidence the termination and release of the Liens and security interests securing the Obligations.

(Payoff Letter (emphasis in original).) The Payoff Letter also authorized Plaintiffs to file specific Uniform Commercial Code ("UCC") termination statements upon Defendants' written confirmation that they had received the Payoff Items from Plaintiffs, or in other words, that Plaintiffs had fulfilled their obligations under the agreement. (*Id.*)

The Payoff Letter attached four schedules (Schedules A, B, C, and D), and one exhibit (sample UCC Termination Statements). Schedule A, titled "Commercial Loan Payoff Request," outlined certain customer information, payoff information, and wire and mail information for the Defendants. The header of Schedule A provided, in relevant part, "[t]his payoff amount is reflective of ALL payments being current, any activity and late fee assessments may affect the

2

stated payoff amount. As such, this payoff amount is not guaranteed." (*See* Compl., Ex. 1 (Schedule A to Payoff Letter ("Schedule A")), ECF No. 1-1, at 6.)

On or before November 2, 2018, Plaintiffs wired to Defendants $144,507,268.72, the amount listed in Schedule D. On the same day, counsel for Citizens Bank confirmed in writing that Defendants had received the "entire Payoff Amount" and Plaintiffs were thereby "authorized to file all UCC-3 terminations." (*Id.*, Ex. 2 (Nov. 2, 2018 Email ("Nov. 2 Email")), ECF No. 1-2.) On the same date, Plaintiffs filed termination statements with the UCC. (*See id.*, Ex. 3 (UCC Amendment Acknowledgments), ECF No. 1-3 (listing November 2, 2018 as the date Plaintiffs filed their UCC amendment statements).) Three days later, on November 5, Kendra Walfield, an employee of Defendant Citizens Bank, N.A., wrote an email to Michael Tolliver, who was, at the time, Controller of Plaintiff Security Alarm Financing Enterprises, L.P., stating that Defendants had not "receive[d] the funds" for an interest payment in the amount of $584,520.13 and "this interest was not included in [Plaintiffs'] payoff." Mr. Tolliver responded that he "expect[ed] to have all the interest payments to be completed by tomorrow." (Aff. of Kendra Walfield, Ex. B (Email from Michael Tolliver), ECF No. 22-3; *see also* Defs.' Opp. to Mot. for J. on the Pleadings ("Defs.' Opp."), ECF No. 22, at 3.)

Approximately six weeks later, on December 20, 2018, Defendants sent a letter to Plaintiffs, explaining that although Plaintiffs had previously paid the payoff amount listed in Schedule D, "[the] amount was incorrectly calculated and did not include an additional $584,520.13 due as of December 17, 2018, under the Existing Loan Documents," and adding that Plaintiffs "must pay this remaining amount to successfully pay in full the outstanding indebtedness under the Existing Loan Documents." (*See* Compl., Ex. 4 (Dec. 20, 2018 Letter), ECF No. 1-4.) On January 15, 2019, without having received a response from Plaintiffs, Defendants withdrew

3

$584,520.13 (the "Withdrawn Funds") from Plaintiffs' operating account. The following day, not yet realizing that Defendants had withdrawn these funds, Plaintiffs sent a letter to Defendants, explaining that Plaintiffs had "fulfilled [their] obligations to [Defendants] and [are] entitled to have the Existing Loan Documents terminated." (*See id.*, Ex. 5 (Jan. 16, 2019 Letter), ECF No. 1-5.) Plaintiffs later received a letter from Defendants with an earlier date of January 15, 2018, wherein Defendants stated that they had already withdrawn $584,520.13 from Plaintiffs' account. (*See id.*, Ex. 6 (Jan. 15, 2019 Letter), ECF No. 1-6.) Despite Plaintiffs' demands that Defendants return the funds, Defendants have not done so.

## II. LEGAL STANDARDS

### A. Rule 12(c) Judgment on the Pleadings.

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Serv's, Inc. v. Int'l Union, United Plant Guard Workers*, 47 F.3d 14, 16 (2d Cir. 1995). The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6). *See, e.g., L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011); *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010); *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Additionally, courts consider multiple factors in determining plausibility, including "the full factual picture presented by the complaint, the particular cause of action and its elements, and

4

the existence of alternative explanations so obvious that they render plaintiffs inferences unreasonable." *L-7 Designs*, 647 F.3d at 430. This Court may also consider "the complaint, the answer [and] any written documents attached to them." *Id.* at 422.

## B. Breach of Contract.

Under New York law, "a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). "The primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement." *In re Coudert Bros.*, 487 B.R. 375, 389 (S.D.N.Y. 2013) (quoting *Compagnie Financiers de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000)). "A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *Brad H. v. City of New York*, 951 N.E.2d 743, 746 (N.Y. 2011).

A court may rescind or reform the terms of a contract where there was a "mutual mistake" between the parties, meaning that both parties to a transaction "share the same erroneous belief and their acts do not in fact accomplish their mutual intent." *Healy v. Rich Prods. Corp.*, 981 F.2d 68, 73 (2d Cir. 1992) (quoting 21 N.Y. Jur. 2d Contracts § 121 (1982)). A party will not succeed on its request for rescission or reformation on a contract, however, if it is asserting mutual mistake simply to "avoid the consequences of its own negligence." *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699, 701 (S.D.N.Y. 2013) (quoting *P.K. Dev., Inc. v. Elvem Dev. Corp.*, 226 A.D.2d 200, 201 (1st Dep't 1996)); *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 320 (S.D.N.Y. 2013) (quoting *Da Silva v. Musso*, 53 N.Y.2d 543 (1981)).

5

In a situation where only one party is mistaken as to a fact surrounding or contained in a contract, *i.e.*, a "unilateral mistake," a court may reform or rescind a contract, only when there is evidence that the non-mistaken party acted fraudulently in causing the mistaken party to hold that erroneous belief, or where the non-mistaken party was or should have been aware that a mistake had been made, but did nothing to correct the error. *See Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991); *see also AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 161 (2d Cir. 2003) (finding that rescission for the purpose of unilateral mistake requires a finding of fraud).

### III. PLAINTIFFS' 12(C) MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS IS GRANTED

Plaintiffs argue that they have successfully met the standard for their motion for partial judgment on the pleadings because: (1) the parties entered into a binding agreement, *i.e.*, the Payoff Letter; (2) Plaintiffs fulfilled their obligations under the agreement; (3) Defendants breached the contract by withdrawing additional funds from Plaintiffs' account after they had accepted Plaintiffs' payment and confirmed that Plaintiffs had completed their obligations under the agreement; and (4) Plaintiffs suffered damages by Defendants' continued refusal to return the Withdrawn Funds. (Compl. at ¶¶ 40–43.) Defendants argue that Plaintiffs have not met their burden because there are relevant facts in dispute, including their claims that Schedule A to the Payoff Letter indicated that the payoff amount is subject to change, and that Plaintiffs, through Mr. Tolliver's November 5, 2018 email, indicated that they were aware that they owed Defendants a certain amount in interest. Therefore, Defendants argue, despite having paid the stated payoff amount listed in Schedule D, Plaintiffs have not fulfilled their obligations under the agreement, and thus Defendants could not have breached the agreement. (Defs.' Opp. at 2–3.) Despite the parties' assertions of a wide array of different arguments, this motion turns solely on whether

6

Defendants are legally permitted to accept Plaintiffs' payment under the agreement, extinguish Plaintiffs' obligations under the agreement, and later demand additional payment under the same agreement. Defendants are not permitted to do so, and Plaintiffs have plausibly alleged that Defendants have breached their agreement under the Payoff Letter.

In this case, Defendants do not deny that they received and accepted Plaintiffs' payment of the Payment Amount, nor do they contest that they confirmed in writing that they accepted Plaintiffs' payment and authorized Plaintiffs to file termination statements with the UCC. Defendants instead rely on the argument that their error in calculating the amount in Schedule D, acceptance of payment in the amount listed in Schedule D, and confirmation that Plaintiffs had completed their obligations under the contract, does not bar them from demanding additional funds. Defendants' argument runs contrary to well-established New York law, and is therefore unpersuasive. *See, e.g., Nat'l Union Fire Ins. Co. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 901 (S.D.N.Y. 1988) ("It is well-settled that a valid release constitutes a complete bar to an action on a claim which is the subject of the release."); *S&S NY Holdings, Inc. v. Able Energy, Inc.*, No. 11 Civ. 2388 (KBF), 2012 WL 3084112, at *5 (S.D.N.Y. July 27, 2012) ("It is black letter law that upon execution of such a release of claims based upon prior agreements, the releasor . . . may not bring any claims based upon those prior agreements."). Indeed, the fact that Defendants authorized Plaintiffs to file UCC terminations fully extinguished Plaintiffs' obligations under the loan, despite any arguments Defendants try to make to the contrary. *See In re Motors Liquidation Co.*, 777 F.3d 100, 105 (2d Cir. 2015) ("[I]t is clear that although JPMorgan never intended to terminate the [loan], it authorized the filing of a UCC–3 termination statement that had that effect.").

Defendants also cannot make out a claim for either unilateral or mutual mistake—principles that, had they applied, might have relieved Defendants from this black letter principle.

Not only have Defendants failed to assert any claim that Plaintiffs engaged in fraudulent behavior, but they also failed to contest this Court's statement at oral argument that Plaintiffs had not engaged in fraudulent behavior. (*See* Tr. of Oral Arg. dated June 27, 2019 at 57:6–18; 58:22–59:9.) Moreover, despite the fact that both parties presumably did not realize at the time of the agreement that the amount in Schedule D was incorrect, Defendants could not successfully assert a claim for mutual mistake simply in order to shield themselves from their own negligence. In fact, there is no question here that the mistake was due to their negligence—indeed, Defendants admitted both in their December 20, 2018 letter to Plaintiffs and at oral argument that the incorrect payment amount listed in Schedule D was due to their own miscalculation. (*See id.* at 49:6–10 (Defendants explaining that they accepted Plaintiffs' payment and informed Plaintiffs that they were released from the lien due to a "mistake"); *see also* Compl., Ex. 4 (Dec. 20, 2018 Letter) (stating that the amount in the Payoff Letter "was incorrectly calculated and did not include an additional $584,520.13").) Therefore, Defendants' assertion that they miscalculated and mistakenly accepted the amount owed does not support their argument that they are permitted to change the terms of the agreement.

In what appears to be an attempt to side-step their miscalculation and acceptance of the mistaken amount, Defendants argue that Schedule A to the agreement was incorporated into the Payoff Letter, which Plaintiffs deny. This issue, however, is immaterial for the purpose of this motion. Even construing all facts in a light most favorable to Defendants—*i.e.*, Schedule A was incorporated into the agreement, that the payoff amount was subject to change, and Plaintiffs were aware that it was subject to change—Defendants nonetheless accepted Plaintiffs' payment and thereafter confirmed in writing that Plaintiffs had met their obligations under the contract. (*See* Compl., Ex. 2 (Nov. 2, 2018 Email).) Defendants may not now argue that they have the right to

8

return six weeks later and take additional funds which they claim to have mistakenly overlooked in the first place.

In addition to being impermissible under established New York law, it would also be unfair and unreasonable to allow Defendants, under these circumstances, to collect additional funds under the contract. Permitting Defendants to do so would leave Plaintiffs vulnerable to an indefinite number of future demands by the Defendants, because there would be no point in time at which the parties would be sure that Plaintiffs' obligations are completely extinguished. Although Defendants at oral argument stated that the timeline is not indefinite because any additional funds that Plaintiffs owed stopped accruing as of November 5, 2018, (see Tr. of Oral Arg. dated June 27, 2019 at 52:12–53:9), the date on which Ms. Walfield sent her email—and presumably, the earliest point in time at which anyone noticed the mistake—Defendants could not articulate any rational basis for drawing the line at this date. Indeed, as this Court pointed out during oral argument, Defendants simply picked a convenient point in time based on the facts of this case, but had not provided any reasonable explanation as to why, if they were permitted to demand additional funds six weeks after payment, they could not do so after six months, six years, or more. Defendants argue that this date is relevant because this email exchange indicates an acknowledgment by Plaintiffs of an obligation to pay the Withdrawn Funds (*id.* at 53: 21–23). Even assuming, *arguendo*, that Mr. Tolliver's email response demonstrates that Plaintiffs were made aware of an outstanding balance as of November 5, 2018, this would not change Plaintiffs' obligation as of November 2, 2018—the date on which the parties signed the agreement and Defendants confirmed that Plaintiffs were no longer obligated under the contract. Plaintiffs, therefore, did not have outstanding obligations under this contract after November 2, 2018, and Defendants were not thereafter permitted to withdraw the additional funds.

9

## IV. CONCLUSION

Plaintiff's motion for judgment on the pleadings is GRANTED. The Clerk of Court is directed to close this motion (ECF No. 19) accordingly.

Dated: January 23, 2020
    New York, New York

SO ORDERED.

*George B Daniels*
GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE